BRICKLAYERS AND ALLIED CRAFTS-MEN, LOCAL UNION NO. 44, Plaintiff,

v.

CORBETTA CONSTRUCTION CO., INC., Defendants.

No. 80 Civ. 3049(MEL).

United States District Court, S. D. New York.

April 28, 1981.

Roemer & Featherstonhaugh, Albany, N. Y., for plaintiff; Thomas A. Conway, Albany, N. Y., of counsel.

French, Fink, Markle & McCallion, New York City, for defendant.

Rider, Drake, Weiner & Loeb, P. C., Newburgh, N. Y., for Intervenor-Defendants; David L. Rider, Newburgh, N. Y., of counsel.

LASKER, District Judge.

In 1980, Corbetta Construction Co., Inc. ("Corbetta") was engaged as a structural concrete subcontractor for the erection of the Newburgh-Beacon Bridge No. 2 across the Hudson River in upstate New York. Corbetta was responsible for the installation of a concrete deck on the bridge surface. On April 15, 1980 Corbetta contacted Andrew Gallante, business agent of Bricklayers and Allied Craftsmen, Local Union No. 44 ("Bricklayers") to obtain craftsmen for the project. After assurances that Corbetta would sign a collective bargaining agreement with Bricklayers, Gallante agreed to send union members to work on the bridge.

The bridge surfacing began on April 17, 1980. On that day, members of the Bricklayers performed various tasks in connection with the surfacing. However, Corbetta assigned the job of spray curing the deck to members of the Laborers International Union of North America, Local Union Nos. 17 and 1000, AFL–CIO ("Laborers"). According to the collective bargaining agreement between the Laborers and the Associated General Contractors of America (of which Corbetta is a member), the Laborers' work includes "the spraying and brushing of concrete for preservative purposes." (Affidavit of Lorenzo Diorio, Ex. E, Art. XVI).

After some disagreement over which union should be assigned the spray curing work, the Bricklayers walked off the job the following morning. Bricklayers claims the refusal to work was based on the fact that no contract had been executed between it and Corbetta; Corbetta and the Laborers claim that Bricklayers' refusal to work was based on the dispute over which union would do the spray curing work. On April 22, Bricklayers began picketing the project and on April 23rd Corbetta executed a collective bargaining agreement with Bricklayers in which Corbetta agreed to hire members of Bricklayers to perform masonry work required for the bridge. The contract defined masonry work as follows:

"The application of the following materials, including the cleaning, priming, and preparations of concrete floor surfaces to receive concrete stain, sealers, curers, hardeners· and waxes; the aforementioned materials included in concrete prior to pouring or in the finishing process performed during the curing period (not to exceed one week) is the work of the cement masons." (Affidavit of Andrew T. Gallante, Ex. A., Art. IV, § 4.4).

When Corbetta continued to assign Laborers to do the spray curing work, Bricklayers filed suit in the New York State Supreme Court seeking injunctive relief to have the spray curing work assigned to it on the basis of the quoted contractual provision. Bricklayers was granted a temporary restraining order which required Corbetta to employ only Bricklayers for the masonry work on the bridge. That order was subsequently modified to provide that the spray curing. work would be equally divided between Laborers and Bricklayers. After the state court denied Corbetta's motion to dismiss the complaint on the ground that the National Labor Relations Board ("NLRB") has exclusive jurisdiction of the subject matter, Corbetta removed the action to this court.

Meanwhile, the Laborers had complained to the NLRB that Bricklayers had violated § 8(b)(4)(D) by its strike and picketing in connection with the jurisdictional dispute over which union would do the spray curing work. The NLRB held a hearing pursuant to 29 U.S.C. § 160(k) in June, 1980 and on October 28, 1980 the NLRB rendered its decision awarding the spray curing work to the Laborers. 253 NLRB 15 (1980). On December 15, 1980 the work on the Newburgh-Beacon Bridge No. 2 was completed.[1]

Laborers moves 1) to intervene as parties-defendant pursuant to Fed.R.Civ.Pr. 24(a)(2) or 24(b)(2), 2) to vacate the order that Corbetta employ both Bricklayers and Laborers for spray curing, 3) to dismiss the complaint on the ground that the NLRB has exclusive jurisdiction, and 4) for an order requiring Corbetta to employ only Laborers for spray curing.[2]

### I. Intervention

Laborers contends that it is entitled to intervene because it has a direct interest in the assignment of the spray curing work which Bricklayers claims should be assigned to Bricklayers. It argues that its ability to protect its interest will be impeded by any disposition of the case in its absence and that Corbetta, as the employer, cannot adequately protect its interests. Bricklayers answers that the motion to intervene should be denied because Laborers' legal arguments are identical to those made by Corbetta and Corbetta has already shown in the . course of this litigation that it can adequately protect the interests of the Laborers. Bricklayers also argues that it will be severely prejudiced if Laborers is permitted to intervene because it will then be required again to defend against a motion to dismiss on the ground of the NLRB's exclusive jurisdiction.

Laborers' motion to intervene is granted. Under Fed.R.Civ.Pr. 24(a)(2), one is entitled to intervene in an action

"when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

Laborers' direct interest in the case is clearly evidenced by the fact that the state court

---

1. The completion of the construction project does not render this action moot since the dispute is likely to recur yet evade review in future projects in the relevant geographic area. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Moreover, the existence of the order in the case creates a conflict with the decision of the NLRB which should be resolved at this time.

2. Laborers also moves for an order enjoining further judicial and nonjudicial proceedings instituted by Bricklayers for the purpose of compelling an assignment of the spray curing work to Bricklayers pending the NLRB decision. Since the NLRB decision has now been rendered, that part of Laborers' motion is moot.

temporarily divided the spray curing work between it and Bricklayers. The ultimate resolution of this dispute must entail an award of this work to either Bricklayers or Laborers, not both. Moreover, Laborers' ability to protect its interests may be impaired if the action is resolved in its absence in light of the fact that Bricklayers is seeking to permanently enjoin Corbetta from employing anyone who is not a member of Bricklayers for the spray curing work. It cannot be expected that Corbetta can adequately protect Laborers' interests. As the employer, Corbetta, stands in the middle of a jurisdictional dispute which is essentially between the two unions.

## II. The Motion to Dismiss the Complaint and Vacate the Existing Order

Laborers contends that the complaint should be dismissed and the existing order vacated on the ground that the case involves a jurisdictional dispute between unions within the exclusive jurisdiction of the NLRB. Bricklayers responds that the action should not be dismissed or the existing order vacated because the case involves simply an attempt to enforce its contract with Corbetta as to which the court has jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). In addition, Bricklayers argues that the prior denial of Corbetta's motion to dismiss on the ground of the NLRB's exclusive jurisdiction constitutes the law of the case.

■■■ Laborers' motion to dismiss the complaint and vacate the existing order is granted. It is true, as Bricklayers contends, that the courts have jurisdiction to entertain suits seeking enforcement of collective bargaining agreements even when the alleged breach of the collective bargaining agreement may constitute an unfair labor practice. *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297–298, 91 S.Ct. 1909, 1923–24, 29 L.Ed.2d 473 (1971). In

the context of a jurisdictional dispute over work assignments, however, judicial enforcement of a single collective bargaining agreement cannot resolve the matter. "In such a case, it is unlikely that a single contract can be conclusive, for there 'usually is more than one contract and it is the competing claims of right under separate contracts which form the origin of the jurisdictional dispute.'" *NLRB v. New York Lithographers and Photographers' Union No. 1P, Graphic Arts International Union, AFL–CIO*, 600 F.2d 336, 340 (2d Cir. 1979), quoting *NLRB v. Local 1291, International Longshoremen's Association*, 354 F.2d 4, 10 (3d Cir.), cert. denied, 382 U.S. 891, 86 S.Ct. 183, 15 L.Ed.2d 149 (1965). In such circumstances, the contractual provisions can only constitute one factor among the several which must be considered in determining which union is entitled to the disputed work. *NLRB v. Radio and Television Broadcast Engineers Union, Local 1212, International Brotherhood of Electrical Workers, AFL–CIO*, 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961). Congress has decided that, in the absence of "agreed upon methods for voluntary adjustment," the NLRB is "empowered and directed to hear and determine the dispute." 29 U.S.C. § 160(k).[3] While the courts have jurisdiction to enforce a contractual provision requiring arbitration of jurisdictional disputes, *William E. Arnold Co. v. Carpenters District Council of Jacksonville and Vicinity*, 417 U.S. 12, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974) in the circumstances of this case only the NLRB has the power to consider and weigh all the relevant facts and determine the merits of the dispute. *See Radio Engineers, supra.*

In the present case, it is clear that the claims center around the jurisdictional dispute over the assignment of spray curing work. Bricklayers seeks to force Corbetta to hire its members for the work, and Laborers seeks to have its members do the

---

**3.** 29 U.S.C. § 160(k) provides in full:

"(k) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title, the Board is empowered and directed to hear and determine the dispute out of which such unfair labor practice shall have arisen, unless, within ten days after notice that

such charge has been filed, the parties to such dispute submit to the Board satisfactory evidence that they have adjusted, or agreed upon methods for the voluntary adjustment of the dispute. Upon compliance by the parties to the dispute with the decision of the Board or upon such voluntary adjustment of the dispute, such charge shall be dismissed."

work. There is no agreed method for voluntary resolution of the dispute. The NLRB has determined that an unfair labor practice has occurred, and the dispute cannot be resolved on the merits by judicial enforcement of the Bricklayers' collective bargaining agreement. Accordingly, this is a case where the "courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). For the same reasons, Laborers' motion to compel Corbetta to hire only its members for the disputed work must be denied.

The doctrine of law of the case does not preclude reconsideration of the state court's decision. "In this Circuit, the law of the case is a discretionary doctrine that need not be applied when no prejudice results from its omission." *First National Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 450, 453, n.3 (2d Cir. 1976). Here application of the doctrine would be particularly inappropriate since Corbetta's motion to dismiss was denied without prejudice to its renewal after a factual hearing and Laborers was not a party to the prior proceeding. In any event, the doctrine cannot apply to the fundamental questions of jurisdiction. *Green v. Department of Commerce*, 618 F.2d 836, 839 n.9 (D.C.Cir.1980).

In sum, Laborer's motion to intervene and to vacate the existing order is granted and the complaint is dismissed on the ground that the NLRB has exclusive competence over the issues presented.

It is so ordered.